1-6-7, Harper versus the Department of Veterans Affairs. 1-6-7, Harper versus the Department of Veterans Affairs. May it please the Court, I'm Sandra Wishart. I'm the attorney for the appellant claimant, this is Earlene Harper. My associate is Kevin Cooper. One of the fundamentals of the veterans' adjudication system is that the Board has to make findings of fact. The Board makes these findings of fact. The Board makes the decisions, issues a full, written opinion, and gives reasons or bases for this. This gives us the fundamental basis for the system that it is transparent. We can all see what's going on, we can see what the decisions are, and we can see why those decisions were made. Now in this case, this didn't happen. Certain key findings of fact were not made by the Board. And rather than remanding that to the Board so that those cases could be made, the Veterans Court instead made its own findings of fact to fill in those gaps and to substitute. And you're saying that was contrary to statute? It's contrary to statutes, it's also contrary to numerous decisions of this Court. So in terms of what I'm thinking of preliminarily, Ms. Wischow, is the issue of our jurisdiction. Are you saying that we have jurisdiction over that claim? And I realize there's another claim also that you make in the case. But are you saying that we have jurisdiction over that claim because what the Veterans Court did here, in your view, represents a misinterpretation of its statute? Right, under 7261, 38 U.S.C. 7261. So that, you say, is how you get around our, how you work through our, into our sort of tight jurisdictional keyhole. That's where we balance on that tie graph. Okay. Go ahead. I just wanted to make sure I understood that. Go ahead. Exactly. And under 7261, as this Court has stated in the Andre, Elkins, Hensley, the Mayfield cases, all of them, the Veterans Court is not to make de novo findings of fact. And because of that, that brings us within the jurisdiction of this Court to review whether in fact they did that and to reverse that decision. Now, we contend that there were several key findings of fact that were made by the Court and not by the Board in this case. One of the contentions here is that the VA medical exams procured by the Board were not adequate. That's one of the statutory requirements under the VA, that if medical, a medical exam or an opinion in this case, because the Veteran was deceased, this is his widow's claim, is necessary to make the proper determination that therefore it must be a full and complete medical opinion. Okay. And under the decisions of the Veterans Court, that has to include a full consideration of all the evidence in the medical record that supports the Veteran's claim or intends to support it, and it can't be based on erroneous factual premises. Now, in this case, all of the VA medical opinions that we relied upon all ignore a 1953 medical affidavit. That 1953 affidavit lists a diagnosis of chronic malaria, and it indicates under symptoms chills, aching, fever over the past six months. Now, does that mean the Veteran has chronic malaria? That's a finding of fact. You know, what is the significance of this listing of symptoms? However, none of the VA opinions ever even mentioned that, and there was no mention whatsoever. Is that a violation of the statute? That's a violation of the requirements of the Veterans Court. There are several cases saying that an adequate medical exam must consider all of the evidence that is supportive of the Veteran's claim and can't be based on an erroneous factual premise. Now, in this case, the medical exam... So what you're saying is that every time a medical exam is based on an erroneous factual premise, that becomes an issue of law that we can review? No. That becomes... we've got to work through a couple of steps before we get there. That becomes a question as to whether or not it was an adequate medical exam. That was challenged at the Court of Appeals for Veterans Claim. There, the Court of Appeals for Veterans Claim said that it was fine that they didn't mention these 1953 opinions, and it made two findings of fact to support that. One thing they said was that... I'm sorry, excuse me... that the 1953 medical statement didn't need to be considered because it only recited the 1946 diagnoses of malaria. Now, this is a finding of fact because that's not apparent on its face. It didn't say, in 1946, this gentleman had malaria. It talked about current symptoms and it gave a diagnosis of chronic malaria. Is it a finding of fact, or is it just simply the Veterans Court's discussion of its review of the Board's opinion? I would say it's a finding of fact because they had to do some analysis here. Well, that goes in every case. I mean, certainly the Veterans Court would have, like any other reviewing court, would have to review the determination that was made in the court that it's reviewing, or the tribunal it's reviewing, in order to assess the propriety of that action. That's correct, but I think by doing this, the Veterans Court was making an additional finding that this didn't have an appropriate value because it was merely an assessment. It doesn't say that. We're simply saying this is something that the Board should have reviewed. The Board should... if that 1953 opinion was of no appropriate value because all it was was to say the guy had malaria back in 1946, that's something the Board should have said. How do we know the Board did not consider it? Well, it's not written. It was before the Board, and it's not required that the Board or any other tribunal identify or describe each and every specific factor considered in order to satisfy the requirement to establish a proper basis for the decision. Well, that's not exactly correct in the case of the Board because their statutory... 38 U.S.C. 7104 says the Board is to make a written statement of the findings and conclusions on all material facts and the reasons or bases for these findings. And, again, the decisions of the Veterans Court, which had interpreted 7104, have been very specific in saying that they must account for any evidence which is in favor of the veterans' claim. But isn't what the Court of Appeals for Veterans Claims did, even under your view, it just misinterpreted these medical reports, these VA medical examiner reports, and thought that they had rejected the 53 medical affidavits, whereas in your view they didn't consider them. It's just a mistake in reading the record, isn't it? I'm not sure what you're saying. They don't say that they ever looked at these 1353... What exactly is the finding of fact here? Where do I find that language that's a finding of fact? Okay. The two findings of fact on this particular issue are in the Court's opinion at 880. I'm sorry, the Court's opinion, not the Court's opinion. Where the Court says the 1953 medical affidavit merely provides a recitation of Mr. Harper's 1946 diagnosis and lawyer. Okay, but why isn't that just a misreading of the record? Why is it a finding of fact? Well, it's a finding of fact because it's an interpretation of what that affidavit says, which is not clear on its face. It doesn't say that on its face. And furthermore, a little bit further down in the next paragraph, they say the record on appeal indicates that both VA medical examiners reviewed Mr. Harper's entire claims file and rejected the 1953 medical affidavits as evidence of Mr. Harper's recurrent malaria. Now, again, this is making a finding of fact. But isn't that just to sort of, I guess, pick up on what Judge Dyke was saying. Isn't that either a correct or an incorrect reading of what the record indicates? Because it says the record on appeal indicates. Now, the Court is saying here's what the record says. Now, the Court is either right or wrong in that. But isn't that all it's doing? I mean, courts do that all the time. And we say on oral argument and in opinions, the record indicates. That doesn't mean that we're making a finding of fact. Well, the record doesn't indicate that. Well, that's right. In other words, then perhaps the Court is wrong in its reading. As I said, that reading of the record is either right or wrong. And assuming it's wrong, the Court has misread the record. Well, where I think the finding of fact comes in is that they say that it was this implicit. Like, they don't claim. The Court never claims that the VA medical examiners specifically said this 1953 opinion is of no value for whatever reason. What they say is that the VA examiners implicitly rejected it. That somehow they saw it was there, they considered it, and they implicitly rejected it. Now, that's not in the record. So for them to come up with this conclusion in order to support the Board's decision on this point, they have to have made some kind of finding that in fact the relevant medical evidence was considered. And it's not there in the record. So that's why it's a finding of fact, because it's a finding of the essential basis. Now, Ms. Wisho, you're into your rebuttal. Just barely. Time flies. But we'll restore your full five minutes. Okay, fine. Thank you very much. And we'll hear from the VA. Mr. Poirier? Yes, sir. May it please the Court. I think that there's two fundamental points that I think I would like to add just in addition to what's already in our briefs. The first point is with regard to page A-8. A-8, you said? A-8, which is the same page that the Justice Council was discussing. I think it's important to keep that text in context of what begins at the bottom of page 7 and what follows at the end of page 8. All of that discussion is in context. It's in the context of a clearly erroneous determination. In other words, the Veterans Court is reviewing a fact found by the Board. And the Board found that reasonable efforts had been made to develop the medical opinion. That's the specific requirement. That was what was found as a fact. And it was the burden of Ms. Harper in trying to challenge the Board's determination to demonstrate this is clearly erroneous. It's clearly erroneous that this medical Can we reverse if it was clearly erroneous? Can we reverse if it was clearly erroneous? No, Your Honor. No, I think that's the argument. The fact is that this record is troubling. You have a statement here, for example, on A-15 from one of these examinations. There is no evidence from his record that the malaria was recurring following the two initial episodes in 1946. And yet there was evidence in the record that it was recurrent. In fact, there was evidence in the record that it was chronic. It's just wrong. No, isn't it? I think that what it read in overall, and just piecing out that one sentence, you could say, well, that's wrong. But I think what you're piecing out is that what the court has to decide is, is this finding that there have been reasonable efforts to develop the medical opinions, was that clearly erroneous? And then they respond to an allegation. Are you saying that we should determine whether it's clearly erroneous? I would have thought your argument is that's not our job. That is my argument. But I was trying to – the Cook case says that. In other words, the Cook case says it's not this court's job to look at, to see whether or not the Veterans Court looked at the facts in the law and properly reviewed whether the board had applied the facts in the law. And that's what the Cook says. But I also think that what the Veterans Court did here was basically responding to the things that Ms. Harper had said. Ms. Harper had said, look, this 1953 affidavit is so important. It clearly shows that there was an episode of malaria after 1946. There's two responses, at least, in the Veterans Court's sense. No, we're not persuaded by your argument. First of all, this 1953 document says that there's no symptoms and so forth and has other quibbles about the document. It doesn't prove that you had malaria, basically, is what they're saying. Secondly, it says in there, it's not material anyway because it doesn't fall within the period of time that would have been relevant. And that leads over to the second point that I want to emphasize. I think what gets lost in this case is Ms. Harper focuses on the silence. The silence was justified. There was no reason, there was never any reason to discuss the 1953 affidavit. Why not? Because the whole claim, the indirect causation claim, that the heart attack was caused by liver dysfunction, that it was caused by malaria that the veterans suffered during the war, the medical opinions for Ms. Harper never made any kind of causation at all, never suggested it, never made a link. The only people who made a link were the Veterans Administration's doctor who said, if they could have shown any malaria after the onset of heart disease, possibly there could have been some indirect connection. That onset of heart disease was in the 1970s. That's why if you look in the merit section of the veteran court's opinion, on page 9 I think it is, they talk and they expressly discuss the evidence of any malaria after the 1970s. And that was basically the testimony of the widow, and that's discussed at some great length. In other words, the board did find that there was an affidavit in 1953 and acknowledged it, said chronic malaria. But when it got to the merit section, the only thing the board was interested in was, did that 1953 affidavit show the onset of heart disease? That's what the board was interested in, because that was the only thing that could have been material. If that 1953 affidavit had shown the onset of heart disease, then that would have moved back the relevant period. And so that's why it was discussed. But it is up to the board to figure out what is the relevant medical standards, what are the relevant facts, and it's up to the veterans court to see whether or not there's a sense that they clearly made a mistake. And it's only in that case, when the veterans court decides they clearly made a mistake, that the veterans court will remand. And the veterans court has to be able to discuss, without it being a giant tripwire, why there's no sense that they made a mistake. Where's the reference to the 1953 diagnosis in the board's decision? Okay. The board mentions the 1953 diagnosis in two places. In the background... This is the September 30, 2003 board decision, correct? Right. That's the one the veterans should be... And on page 27, it says that the physical findings were negative, and that the diagnosis included chronic malaria. Where's that on the page? Second full paragraph on page 27. It's on page 27. I just broke down the... I see. I see. So that's what the board's thinking about, and realizing it says chronic malaria, but it says no physical findings. And then in the decision, it says the medical evidence doesn't show that there was a recurrence of malaria after... And I think that's significant, because I don't think that the board is out to try and say, well, we know for a fact, absolutely, that the guy never had malaria again, but they said the medical evidence doesn't show it. And so it's clear, I think, and fair for the veterans court to realize that the board considered this and did not consider it to be medical evidence of a recurrence of malaria. You mean after the heart problems were discovered? Both. I mentioned the sites are filled out in my brief, but the board goes through sometimes, and the 98 opinion and the 2001 medical opinion all say you would have to show malaria in the relevant time frame, that is, the time frame after the onset of heart disease. There's four places in the board that discuss the onset of heart disease. It's at page 27, 28, 32, and 33. And they go four different ways, different methodologies that they figure out when the onset of heart disease was, based on various records that they discussed. The dates vary from 1974 to 1977. But anyway, it's clear that that's the onset of heart disease. If you're talking about materiality, even if the court were to decide that it was a mistake for the board to discuss the 1953 affidavit in the way that they did in terms of the duty to assist, that sounds like a finding de novo. Even if you were to reach that conclusion, which I don't agree with, it's not material. And it would have to be harmless error. Because you can tell without any new facts finding, you can tell just by looking at the opinions, that the medical decisions were, and the only medical decision, because there's nothing for Mrs. Harper's doctors at all, the only relevant fact would have been malaria after the 1970s. And the 1953 affidavit is totally irrelevant to that. But I don't think you should consider this a finding de novo. I think it's basically, it's only through a hyper-technical look at the language that you can reach the conclusion that counsel for Mrs. Harper has elaborately woven for the court. In context, if you just read through it, basically what you see is Mrs. Harper made a claim, there's a terrible mistake here, they didn't consider this very important affidavit, which shows for sure that the veteran had malaria in 1953. And basically, the Veterans Court comes back and says two things, or three things really. It says, one, it doesn't clearly show that he had malaria. Two, there's no reason to think that the medical people didn't see it, because they reviewed the entire file, and they said there's no onset after 1946, and the board clearly knew that it says chronic malaria, it puts it right in the opinion. And three, the Veterans Court goes out of its way to say it's not within the relevant time frame. And I think in closing, if I want to just highlight that line, if you look briefly on page seven of the record again, excuse me, page eight of the record, in the middle of the page, the Veterans Court, in responding to this claim by Mrs. Harper, goes out of its way, it's about five or six lines down, says the examiner explained that in order for the malaria to receive serious consideration as a contributing factor to his death, it would be necessary to show that he did have a recurrence or recurrences of the anemia during a period following the development of heart disease and lung disease. And just above that, at the last part of the previous paragraph, the Veterans Court goes out of the way to mention the board finding that there was no cardiovascular disease or any other relevant disease, i.e. malaria, until many years after service. So, the time frame is wrong. One last small point I want to mention, although it wasn't emphasized by Mrs. Harper in her argument, there's been a suggestion that the board in the Veterans Court did not discuss the relevant regulation about indirect causation. In fact, they did. That's her second claim. That's the second contention on appeal. Well, I counted it as the fourth, but in any event, it was one of the claims. It's mentioned twice in the board decision, cited not the specific subsection, but the general section. And clearly, the whole substance of all of the medical opinions and the board decision itself is all indirect causation. I mean, that's what it's all about. That's all the discussion. The guy died of a heart attack. And the claim that was investigated by the VA very thoroughly over a period of time is that somehow malaria 50 years earlier had caused liver dysfunction that contributed to the heart attack. And in fact, even Mrs. Harper's own doctors admitted that it's far more common for heart disease to cause the liver dysfunction than the other way around. Any other questions? Thank you, Mr. Clark. Ms. Wischow, as I said earlier, you have your full five minutes of rebuttal. Thank you. A couple of points I'd like to start out with just in response to the contentions by the government. One is this notion that the malaria had to happen after the heart disease. Now, the 1998 medical opinion says that. The 2001 medical opinion does not say that at all. It's in the record of A22, the last paragraph. As Dr. Wall notes, there's no evidence in his record that his malaria was recurrent following the two episodes in 1946. As a result of that fact, there were two episodes of malaria only, and it is not a chronic disease related in time to his development of coronary artery disease in much later years would be unlikely to be a contributing factor. Now, that does not necessarily say that malaria has to come after the heart disease. And in fact, that seems a little backwards. I'm not a doctor, but if we're saying that the malaria could potentially cause hepatic dysfunction, which could cause heart disease, then it would seem like it has to be before the heart disease, not after the heart disease. However, this 2001 opinion, which was gotten by the VA specifically to address this whole question because the VA had found there was not adequate medical support yet, that they needed to address this connection that was raised by Mrs. Harper's doctors, saying that there could be this chain of malaria causing hepatic dysfunction causing cardiac disease. That opinion is explicitly and specifically based on this notion that the malaria never happened after 1946, that there were only two episodes, no chronic malaria. And that directly is contradicted by that 1953 medical affidavit and should have been considered by these doctors, and it should have been considered by the court. Now, is this an argument different? The argument you were making, I think what you discussed with the panel, Ms. Wishon, the main portion of your argument was that the Court of Appeals for Veterans Claims improperly made findings of fact. Exactly. Is this part of that, or is that going to... This is part of it because those things should have been considered, and the way the court dealt with it and said that they didn't have to remand it was by making this finding a fact that it was considered. You urge a remand here for the, I mean, I think, correct? Exactly. You recognize that, assuming everything you say is correct, that we can't make a decision on the entitlement. Absolutely, and I'm not asking you to make a decision, or the Court of Appeals for Veterans Claims for that matter. This is all fact finding that needs to be done by the board. So what should have happened and what needs to happen now is this case needs to go back to the board, either to get a supplemental opinion from this doctor or a different doctor, saying, look at this 1953 medical affidavit. This is evidence of some sort. Consider it. Decide what effect this has. And the board should have also considered it as part of its reasons or bases. And it's not enough just to say, well, they made some kind of sub salientia finding that it's not relevant evidence, so they didn't have to discuss it. That's not the way the veteran system is supposed to work. Evidence which tends to support the claimant's position needs to be explicitly discussed. And if they're going to reject it, they need to reject it and tell you why, not simply not mention it. This is the argument that they didn't take into account that regulation, correct? Well, the regulation as well. And just to talk briefly about that, that regulation doesn't just say indirect causation. It says that if there is a disease which can affect the bodily functions, they should look carefully at whether or not that may have led to the particular problem from which the veteran died. And in this case, they did not give any careful consideration. They didn't even mention that specific finding. And the court didn't really mention it either. They just basically said the appellant's arguments are not persuasive. But in no way did the court ever go into why this shouldn't have been discussed or why there was no need for it. And again, the board has a statutory obligation to discuss all of the law in the case. Are there any further questions? No, I think not, Ms. Swishow. Okay, thank you very much. Ms. Swishow, thank you. Mr. Poirier, thank you.